Good morning, Your Honors. May it please the Court, Daniel Behrer, representing Appellant and Plaintiff Encompass Insurance. And we're dealing here with the question of whether pulling an injured person out of a car is unloading the car and therefore use of the car. Both the Coast and Mid-Century policies, the defendant policies, covered Ms. Torte, the insured in question, if she used Mr. Watson's car with Mr. Watson's permission. The Court didn't reach the permission issue, that's in the future, so we'll assume she pulled Ms. Van Horn out with Mr. Watson's permission. So the question is, is pulling her out, unloading her from the car, use? Well, the California Courts and especially the California Insurance Code sections regarding four-wheeled automobiles says that unloading an automobile is using it. And it talks about it in terms that don't just extend to the trucking industry, which is where most of the cases are, but specifically situations involving autos such as, by referring to, for instance, the insured's relatives using the car. So, she was, under California law, using the car with Mr. Watson's permission. Well, she was loading or unloading, and the next question is, does that equal using, correct? Yes, Your Honor, and the answer is yes, because you've got the Insurance Code section 11580.06G, which says that use includes loading or unloading. You've got a host of California cases from at least the last 60 years, 50 years, sorry, the last 50 years saying that unloading is use, even under the complete operations doctrine, even things like waiting, being hit by a pipe as the pile is snipped and opened and a pipe falling on you and nothing's gone onto the car yet is loading and that's use. Something after it's unloaded is use or in the process of unloading. Only a situation like Ants where everything's dumped off and they're now shoveling the concrete into the holes, that's beyond use. And in the IBM case, when they're getting ready to load, having a messy loading dock does not make, which causes... The one set of cases that, while not directly applicable, at least suggest the kind of standard that the district judge sort of added on are the maintenance cases. Because if you read the maintenance, you could do the same thing with the maintenance cases as you're doing with loading, but the courts don't tend to do that. If somebody is maintaining the car, i.e. repairing it with the permission of the owner, literally speaking, that would appear to come within the same statutory language, well, not the same statutory language, but the language of the same statute and therefore would come to the same conclusion, but the cases don't. Yes, Your Honor, and the cases you're talking about, Travelers in Yandel, at the time that they were decided, the statutes that we're talking about weren't around. The Travelers case was in the 1970s. Right, but then you'd have to be willing to buy into the notion that today it would come out otherwise. Yes, Your Honor. And you would? Yes. So you would say if somebody is repairing the car, if I take my car to a repair dealer and say, here, fix my car, and while he's fixing it, it rolls off over him or something because the brake goes, that would be a use of the car? Yes. Nowadays, if you brought your car in and somebody was fixing your car with your permission and they put it up on the jacks and it rolled off the jacks and hit somebody and they sued the garage for that, then I would think under the same statutes which say that maintenance in addition to loading and unloading is use, then yes, the person... There is no case like that, though. There is not a case like that. Presumably because people think the Yelp cases are still controlling in some fashion. Perhaps. Well, I'm confused. Travelers suggested that mere maintenance is not enough for use, correct? Correct. So in order for your position to prevail, you have to establish that the statute trumped Travelers, don't you? Yes. Aye. But there's a case, I think it's called Grisham, that suggests that the statute just adopted California jurisprudence. It did adapt California jurisprudence. Well, then, aren't you stuck with a limitation of each of those words in the statute in much the same way as Travelers limited the word maintenance? Well, even the Travelers case said loading and unloading was use. Well, absolutely. The question is, does it have to be loading and unloading plus? And as the use of the word maintenance, Travelers said it has to be not just maintenance but something further. Well, of course, the Grisham case was dealing with the loading and unloading. That was the case with the dogs leaving the parked car and biting somebody. But in terms of maintenance, I don't think it said that the pre-11580 maintenance standard applies because at that point you had a different statute. You had the Vehicle Code Section 16451, which treated use by an owner and use by a third person differently. It said that maintenance by an owner was covered but that a third person was covered only for use and didn't define use, which is why the Yandel and Travelers cases found it necessary to define use. And they defined it not to include maintenance. Later, the statutes in the legislature said that maintenance along with loading and unloading was included in use. So I would have to say that a maintenance case decided now would be decided differently than Yandel or Travelers. So now you're saying, differently than you said before, that the statute does trump Travelers. You can't have it both ways, can you? The statute, yes, I can, Your Honor, because it trumps in terms of maintenance, which is the issue that was dealt with in Travelers. It does not trump in terms of loading and unloading because at the time Travelers was decided and after Travelers was decided, loading and unloading was use. Well, nobody disputes that loading and unloading was what occurred here. Yes, Your Honor. But the dispute is whether it is use. Yes, Your Honor, and the legislature said it is. And neither Travelers nor Yandel said otherwise. They both said that loading and unloading is use. So the district court in saying you need use in addition to loading and unloading seems to be skipping over the law that says that loading and unloading is use. You don't need to, the cars need to benefit the person or be there for her enjoyment. Just the loading and unloading was use. The provision 11580.1, which says that it has this exception that with regard to insurance afforded for the loading or unloading of the motor vehicle, the insurance may be limited to apply only to the named insured or relative of the named insured, a lessee or bailey of the motor vehicle or an employee of any of those persons. So, but it wasn't. Is that your point? In other words, it could have been written to exclude this. It could have been written to exclude that. That's one of my points. It could have been written to exclude this person who is none of those things. Right. Subdivision before expressly. So a lot of the arguments on the other side, which is this parade of hollerables about strangers showing up and so on, they can write the insurance to exclude it. Yes, although all those are based on lack of permission. I understand that. But they could write it to exclude people even with permission or not within these categories, which would have been the person in this case. She could have been excluded. Yes, Your Honor. It could have been written more restrictively. The statute allows that. Okay. But it didn't. And the fact that they're talking about. Are there any rules of construction of insurance policies that might apply here? There are, Your Honor. There's the rule that coverage provisions must be interpreted broadly. And here we're dealing with coverage provisions. And there's the rule that ambiguities are resolved against the insurer. We can maintain these provisions aren't ambiguous. But if they're contending otherwise, it has to be interpreted against them. You also, under this provision, could write out the maintenance people. Yes, you could, Your Honor. Which is some evidence that they're otherwise in. I'm sorry. Which is some indication that they're otherwise in. Yes, Your Honor. Okay. If there are any other questions, I will reserve the rest of my time for rebuttal. All right. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. I am Namora Lejave, and I represent the two California auto liability insurance carriers, Coast National Insurance Company and MidCentury Insurance Company. And they are being sued by Encompass, an Illinois company, who wrote a general liability policy for Tordy's family for which they charged a $23,000 premium. And they are suing my auto liability carriers for a risk that is clearly covered under a general liability policy and is clearly not covered under an auto liability policy. It certainly isn't clearly not covered. Well, I think it is clear, Your Honor. I mean, you have to read something into the statutory provisions to get there. You have to. Sure. The statutory provisions for loading and unloading have to be interpreted in light of the plain meaning of the term used, which is to avail oneself of something, to employ something, to… But when you have a statutory definition that says use includes loading and unloading… Certainly. Use includes loading and unloading when loading and unloading are used. And the example is the national indemnity case that Encompass relied on so heavily in the trial court. In national indemnity, we have an aunt who is babysitting her nephew, and she is babysitting him at her house. She is driving him back to his house as prearranged with his parents to take him home. All right. I mean, you can come up with a matter of hypotheticals, but suppose she hadn't been driving the car, but somebody had driven him up to her house, and she had gone in to get the child out of the car, and the brake left and went rolling off, and she got hurt. And she is suing who? She is suing as a user of the car and the owner of the car, and the question is, is she covered? I don't know that I quite follow the hypothetical, Your Honor, but I think if you wanted to use somebody else's car, I can come up with a hypothetical where she's still in charge of the child, she needs to bring the child home, and her car dies, and she borrows her neighbor's car. And she's driving her neighbor's car, not owned by her, but she's driving it. No, I'm not. My hypothetical is she's not driving the car, but she is unloading the child from the car. So someone else is driving her back to the child's parents' home? Right. See, that's why I can't. No, she's just coming out of her house. I mean, this happens every day, right? The child's in the car, he's in his car. I say, would you help me get the child out of the car? Yes, I'll help you get the child out of the car. And the car takes off and hurts her. Or hurts the child, let's say. Hurts the child. So she's in the car, and she's helping unload the child from the car, but it's not her car? It's not her car, and she wasn't driving it. And is she covered under the car's policy? Yes. That is the question that the Court is asking me. I don't know if in that situation. I would think that there's an argument. It's certainly a better argument than the one in this case. Seems exactly the same as this one. No, it's not at all in this one. Because in this case, Ms. Tordy was not riding in the car. She wasn't in my hypothetical either. Go ahead. She was not charged with anything to do with the child. Well, that's the permission issue. I don't know that that's the permission issue. Because in all the commercial cases, and in National Indemnity, and in the Broome case from New York that was cited by the plaintiffs, all of those cases include some sort of prearranged thing, which is why the unloading, unloading is part of the transport of the goods or of the people. When the cases say that unloading and loading are an extension of use, they don't mean that it's now unloading or use. All that that means is that the transport of the people and goods doesn't start when you turn on the engine and hit the road. It starts when you're putting the person or the thing into the car at the shipping point. But we know that for a commercial, if this was a truck and they were unloading stuff, that would count, by somebody who had nothing else to do with the truck. Well, not if it's a – no, I do not agree with that premise. Because if the loading and unloading trucking cases all involve loading the truck at the shipping point and unloading it at the delivery point, none of them involve a fact pattern when the car stops or the truck stops somewhere en route and somebody random helps take something out of the car. Now that I understand the hypothetical Your Honor asked me, I misunderstood it at first, that the hypothetical aunt in your situation had nothing to do with the car and just walked up to the car and helped take the child out. I don't think she would be covered under the car's policy at all, because she has nothing to do with the car. She wasn't using the car. That hypothetical would be as if the mother, in national indemnity, walked out of the house to the car, opened the door and took her son out. And you're saying the mother would not be a user. No. In the mother's situation, I think there is a distinction, because I think now you're making it closer to the commercial cases. The mother was the person in charge of getting the child at the point of delivery. So in that respect, she's exactly like the consignee in the truck case. In national indemnity, the driver is the aunt.  Driving her nephew. Back to the nephew's mother's house. So the hypothetical, as I understand it, was comparable to national indemnity, except in the hypothetical, the mother walks out from the house and opens the door. If that is the hypothetical, now that I finally understand it, I think that is different from the torte situation. And I think in that situation— But you say now you're making up rules, none of which are in the statute or in the policy. And it's also the case that, as we were saying before, that the statute has an exception. So you could have just written this person out. Well, we could have written permissive users out for loading and unloading, but we didn't want to write permissive users out for loading and unloading because of situations like national indemnity, where the unloading and loading are part of the transport of the car. And I don't think I'm making the rules up, because in the mother's situation, the mother is the person expecting the child at the point of delivery. And when she takes the child out of the car, she's availing herself of the car. The car is bringing her child back to her. She's deriving a benefit from the car. And then you would draw a line. And this is why I think you're making rules up that aren't there. But then you would say if it was the aunt, if she was driving to the aunt's house and the aunt came to help the kid get out of the car, she doesn't count. But those things do matter, Your Honor. Why? Where are you getting it from? Because when you're using – because to use something, the definition of use and how – And the mother is using the car and the aunt's not using the car, but they're doing exactly the same thing for exactly the same reason. They're doing exactly the same thing. They're not doing it for the exact same reasons. The mother is the person in charge of receiving her child back at her house. The child is being delivered to her by the aunt. But there's nothing in the statute or the – the approach of your opponent is at least a clear, understandable approach. And if you don't like it, you write them out. You could even write them out in part, right? You could write out a permissive user who is not, in fact, otherwise a user of the car. You could do that. But – and precisely because you could write them out, it seems to me it makes a lot more sense to take a literalist approach to the statute and then say if the insurance company doesn't like it, write it out. But, Your Honor, how does that avoid a situation where we're interpreting if a person is coming to a car – if the mere removal of someone or something from a car constitutes use of the car? Most of your hypotheticals – your somewhat over-the-top hypotheticals and your briefs about burglars and kidnappers all will fall apart at the permission stage. They will fall apart at the permission stage, but I'm not at the permission stage. I understand that, but that's why they're silly hypotheticals. They have nothing to do with an actual – with any problem with this interpretation. I do think they do because if you're looking at only use and you're defining use as the mere removal of someone from a car, then a kidnapper who goes to abduct a child and removes a child from a car is using the car based on that approach. That could be, but he doesn't have permission. He doesn't have permission, but how could reasonable minds say that that is use of a car, that kidnapping a child from a car means that you're using a car? That's a complete divorce. Permission comes first. Let me ask you this. When Tori – she came upon this accident and then she rushed over to the car and here's this woman sitting in the seat and Tori smells some liquid coming out and is worried that this car may catch on fire. And what if Watson, who was injured himself, turned to her and said, oh, I'm worried about her and there might be a fire. Would you take her out, please? And so Tori goes out and takes the woman out of the car, the plaintiff. Would there be coverage on that? Well, now we're talking about permission. Whenever I know what I'm talking about, I just ask you a question. Would there be coverage there? No, I still don't think she's using the car. She's helping take the person out of the car, but that's not using the car. She's not employing the car or availing herself of the car in any way, shape, or form. But she's unloading the passenger from the back seat because the driver, who's the insured, is worried that the car is going to catch on fire. And she goes out there and she takes the person out. That's not unloading. I mean, we have to construe these policies in favor of coverage. Isn't that the way it works? Well, we don't have to construe them in favor of coverage. We have to construe them within their plain meaning. And the plain meaning of use, which has never been found to be ambiguous in any of the case law, and in the traveler's case, the court specifically says that use means... Most language is ambiguous. Let's take the traveler's case for a minute, okay? I mean, you don't agree with that? Go talk to your English professor. Go look up a word. You'll get 15 other words that will describe the same thing. Again, there's an exception in 11580.1, which says that they can write out any person, essentially anybody who is in the business of selling, repairing, servicing, delivering, etc., for any accident arising out of the maintenance. Now, if those people weren't in, why are they providing that they come out, that they can be written out? In other words, hasn't traveler's been overwritten? No, I don't think so, because I think the maintenance situation would still apply in certain scenarios, like the example that they give with the guy with the tire in, I think it was the Ohio case, where the replacement of the tire was part of his journey with the car. He was using the car and replacing the tire. So he would be covered? Yes, he was covered. Right. But travelers in the other case held that the maintenance person is not covered if they're a repair person, and now it appears under the statute they are covered as used, even though you would say not under your definition, but they can be written out. Why else do you have the writing out part? And which section of the 11-580, Your Honor, is the- It's 4B. D? 4B-2. D or B? B. Little 2. You can write out any person or to any agent or employee thereof employed or otherwise engaged in the business of selling, repairing, servicing, delivering, testing, road testing, parking or storing automobiles with respect to any accident arising out of the maintenance or use of a motor vehicle in connection thereof. In other words, you can accept those people. Because I think that if a maintenance person would be using the car otherwise, what this provision allows the carrier to do is to write them out of the statute. Right. But in your theory, they wouldn't be using the car otherwise. Well, it depends on the fact pattern. In the fact pattern in the Travelers case, he was determined to not be using the car because he wasn't availing himself of the car or employing it. But I can envision situations where somebody would- It says arising out of the maintenance. What about would that be written to take care of the Ohio case circumstance where the maintenance worker actually drove the car? Exactly. And so whereas that would normally be included in use, you are allowed under the statute to write language to exclude that plus factor. Exactly. Or to exclude the person who engages in the plus factor so that they are not using, they are merely maintaining. Exactly. It would be helpful for me if you could give me a sentence or two that describes the standard that you think is implicit someplace here, although not articulated. The standard that I believe is required is that the person using the car has to employ the car in some fashion, derive some benefit from it, avail him or herself of the car. And whether it's by maintaining, loading or unloading, then there has to be use.  So in our various hypotheticals from before, if the mother were a passenger in the car, if the aunt were a passenger in the car and helped the kid get out, that would be different. I'm sorry. That would be? That would count if she were a passenger in the car. Yes. I think that would count. I think that my standard is that when someone who has nothing to do- Even though she was doing exactly the same thing for exactly the same reason, unloading the child. Well, but in that hypothetical, she's not doing the exact same thing because she's availing herself of the car and she's part- Well, that's before. I just wonder what passion you would demonstrate if you were representing a defendant in a murder case. I mean, I've never seen so much excitement over an insurance policy in a long time. Well, we're talking about money. I apologize, Your Honor. This is what I do for a living, and I think it's a good thing that I'm excited about it. Well, what if, what if, what if- And I do think that it's important for people on trial- Okay, just be quiet for a minute, would you, please? What if the woman who was injured in the back seat realized she was in great danger and asked Torrey, Torrey, please unload me from this vehicle? Would Torrey be covered? Not under the vehicle policy, no. If Torrey performed that act negligently- But if Torrey had been a passenger in the car, she would have been. That has to be her answer, because that's what you just said. Yes, because then she's availing herself- But it's sequential. That's what's so odd about it. She was a passenger in the car, but at the time all this is happening, the car's not going anywhere and she's not a passenger in the car, and she's doing exactly the same thing for exactly the same reason, getting this woman out of the car, unloading her. So what difference does it make that she was driving in the car before that? Because she has nothing to do with that car. There has to be some connection to the car for it to be used. You have to be availing yourself of the object. We're looking for coverage. We're not looking for coverage in the abstract. We're looking for coverage under a liability insurance policy that ensures use- But I'm trying to- So the liability insurance companies don't want people to come in and rescue someone who's in the back seat who might be incinerated? Well- That's not something- That's an assumption that's not really present in the facts of this case to begin with, so I take issue with that. But insurance companies don't want to make car insurance in California unaffordable to people because the risk that they're designed to insure is being broadened. Please don't give me that argument. They go to the state legislature, they've got lobbyists, they get what they want. I have a question. You're not exciting me about that argument. Is it so that there's been a legislative change in California and this couldn't happen again essentially because she couldn't be liable? Has the sort of good Samaritan laws been changed so that she can't be responsible anymore? Not that I'm aware of, Your Honor. I thought there was some change which would have written her out now at this point. There may be. If so, I'm not aware of it. But the issue in the underlying case was that she sought immunity. You know, your time is up. I'm sorry. It's all right. Have a nice seat. I just do want to remind the Court that the plaintiff in this case is also an insurance company. Thank you, Your Honor. Hello again, Your Honors. I think the statute that Judge Berzon was referring to was the change in the good Samaritan law. The California Supreme Court said that Torte could not avail herself of the good Samaritan statute. I know, but it has been changed. Yeah, I believe it's been changed. So this same scenario wouldn't happen again. So hopefully this wouldn't happen to a person who's rescuing another person in this situation again. So the law does not abhor volunteers anymore in California, even if they're not physicians? Correct. Exactly, Your Honor. Yeah. Unless there are any other questions, I will submit. I'd like to thank both of you for an unusually good argument in an insurance case. Both of you. Thank you. Thank you, Your Honor. All right. Check your coverage.
judges: Pregerson, Murphy, Berzon